IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CRYSTAL LYNN PHILLIPS,      )
                           )
          Plaintiff,        )
vs.                         )    CASE NO. CV-01-TMP-0649-S
                           )
UNITY COMMUNICATIONS INC.,   )
and PAUL SPEIGHT,           )
                           )
          Defendants.       )

**ENTERED**

**DEC 1 1 2002**

## MEMORANDUM OPINION

This cause is before the court on cross-motions for summary judgment filed on March 1, 2002, by defendant Unity Communications, Inc. ("Unity"), defendant Paul Speight, and plaintiff Crystal Lynn Phillips. The motions have been fully briefed, and the court has considered the evidence and the arguments set forth by all parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c). Accordingly, the court files this memorandum opinion.

## I.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to inter- rogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

2

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).


## II.  FACTS

Plaintiff[1] brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981;[2] and, the Fair Labor Standards Act of 1938, 29 U.S.C.

---

[1]    Plaintiff apparently has married and uses the name Crystal Phillips Trout, but is referred to herein as Phillips.

[2]    As defendants point out, § 1981 does not provide relief for discrimination based on gender.  Plaintiff's response to the motions for summary judgment does not address the § 1981 claim set forth in the complaint; accordingly, any § 1981 claims are due to

§ 201, asserting that she was wrongfully denied a promotion because of her gender, that she was paid less than male workers because of her gender, that she was subjected to a hostile working environment, and that she was subjected to retaliation because she filed a complaint with the Equal Employment Opportunity Commission.[3]  In addition, Phillips asserts state-law claims of battery, conspiracy, slander, and tortious interference with contract.

Plaintiff's discrimination claims arise from her employment as an executive sales representative for Unity in Birmingham, Alabama. Taking first the defendants' motion for summary judgment and viewing the evidence in the light most favorable to the plaintiff,[4]

_____

be dismissed.

[3]     Plaintiff's complaint also alleges that she was discriminated against on the basis of her age, although that claim apparently has been abandoned.  In any event, it is clear that plaintiff was 23 years old at the times relevant to her complaint and that she would not, therefore, be a member of a class of persons protected against age discrimination by any state or federal law.  Consequently, she cannot state a *prima facie* case of age discrimination.

[4]     The court does not set forth a summary of undisputed facts in the light most favorable to defendants because, as explained herein, plaintiff fails to present a *prima facie* case of discrimination on all but one claim, even viewing the facts in the light most favorable to her.  Consequently, it would not be possible for plaintiff to be entitled to summary judgment on those claims when the facts are viewed most favorably to the defendants. The facts relevant to the surviving claim of hostile environment will be discussed *infra*.

5

as the non-moving party, the following facts are relevant to the motions for summary judgment:[5]

Phillips, a female, was hired by Unity on or about June 7, 1999, to work in a sales position.  Unity markets communication services to small- and medium-sized businesses and individuals. Phillips' direct supervisor was Craig Garner, Unity's branch manager for the Birmingham office.  Phillips and her husband and/or fiancé, Ben Trout,[6] socialized with Garner and his wife outside of work.  Phillips' base salary was $2,500 per month, plus a car allowance of $250 per month.  She also received a "hiring bonus" of $250 per semi-monthly pay period (the equivalent of $500 per month)

---

[5]     Also before the court is defendants' motion to strike the affidavit of plaintiff to the extent that it contradicts her clear deposition testimony, and motion to strike plaintiffs' exhibits 5, 6, 7, and 11.  Plaintiff has not filed any opposition to the motion to strike.  Having considered the motion, the court finds that, in the instances set forth in detail in the motion, the affidavit contradicts testimony given by Phillips in her deposition without providing any explanation for the differences in the stated facts. Accordingly, the motion (Court document #75) is due to be and is hereby GRANTED, and the portions of plaintiff's affidavit described therein are STRICKEN.  In addition, because the documents submitted by plaintiff as Exhibits 5, 6, 7, and 11 are not authenticated or substantiated in any manner, the motion as to those exhibits also is due to be and is hereby GRANTED, and the exhibits are STRICKEN.

[6]     Trout was employed by Unity at some time near the time plaintiff worked there, but it is not clear when his employment began or ended.  Furthermore, plaintiff does not allege that she earned less than Trout.

6

for the first two months of her employment.[7]  She resigned her
employment ten months later, on April 21, 2000.

When Phillips was hired by Unity, Paul Speight was a regional
manager who lived and worked in Texas but visited the Birmingham
office approximately once every six weeks.   Apparently, Speight
also was a part owner of Unity.   Other sales representatives
working at the same time included Tom Erwin, Ralph Gallups, Rick
Persons, and Mike Lester, all of whom are male.  On March 30, 2000,
Unity promoted Lester to sales manager.[8]  Garner testified that he
promoted Lester to sales manager based on his experience in sales
management.   Phillips testified that she did not know the sales
manager position was available until Lester was given the job and,
thus, expressed no interest in it at that time.

At some time soon after his promotion Lester left Unity, and
Phillips expressed an interest in being promoted to sales manager.[9]

_____

[7]     The only evidence of compensation paid to male employees
deals with the pay of Tom Erwin and Mike Lester.  This evidence is
discussed hereinbelow.

[8]     Plaintiff also alleges that Lester was given a $5,000
raise to prevent him from leaving Unity and because of his personal
financial difficulties following a divorce, but she has not
supported this allegation with any evidence other than hearsay.
Plaintiff's Exhibit 7 shows that Lester received a raise on
February 14, 2000, to an annual salary of $35,000, but there is no
explanation for the raise indicated on the form recording it.

[9]     This time frame is quite narrow.  Lester was promoted to
sales manager on March 30, 2000, and plaintiff resigned just three
weeks later, on April 21, 2000.   Thus, Lester left his position
with defendant and plaintiff expressed her interest in being
considered for sales manager in April 2000.

She called Garner on his cell phone as he was leaving his father's house.  At the time, Garner was upset because his father was dying with lung cancer.   Phillips told Garner she wanted the sales manager position, to which Garner replied that she was "crazy" to want the position and that she could make more money in her sales job.  He also said:  "Are you fucking stupid, how in the hell can you expect a 45-50 year old man to respect a 23-year-old girl."  He spoke to Phillips in what she described as a harsh, angry tone. The sales manager position was never filled after Lester left. Garner explained in deposition that filling the position was "postponed" because the sales force decreased dramatically and a sales manager was no longer needed in Birmingham.[10]

Plaintiff alleges that she was harassed by both her co-workers and her direct supervisor, Garner.  She has testified that Garner began harassing her after she had been at Unity six or seven months, which would place the commencement of the harassment in January or February 2000.  She alleges that, when she was standing in a chair at the office to reach a dry erase board, Garner lifted the hem of her long skirt four or five inches and commented that

---

[10]   Plaintiff testified by affidavit that, after she left Unity's employment, the sales manager position was filled by a male with less experience and education.   This testimony, however, is directly contradicted by her own deposition testimony in which she stated it was her understanding that the sales manager position had been "eliminated" and that she had no knowledge of anyone being hired for that position after she left the employment of defendant. See Plaintiff's Depo. at 461.   Without any explanation for the contradiction, this affidavit testimony is STRICKEN.

she looked good standing in the chair.  Plaintiff also alleges that
Garner made comments about plaintiff's sexual relations with her
husband.  He told her that her bed was warped because she and her
husband had sex so frequently, and he asked if her husband was "a
good fuck."  Garner complained that he did not have sex with his
wife frequently enough and suggested to Phillips that she "get
together" with Garner and that they would be a "perfect fit."
After plaintiff got braces on her teeth, Garner made comments about
her ability to have oral sex with her husband.  Plaintiff further
asserts that Garner made sexual comments and frequently used
profanity around her at the office.  She complained to Garner about
receiving offensive e-mails, but he did not take any action to stop
them.

Plaintiff alleges that she saw a pornographic photograph on
Garner's computer at work.  She told Garner that she had been the
victim of sexual abuse as a child.  He was very sympathetic when
she told him, but she felt he harassed her afterwards in that he
asked her about once a week whether she was "okay."  He asked her
to go out with him for drinks after work and, when she declined, he
asked if she didn't trust men.  After a dress code was published at
the office prohibiting mini-skirts and V-neck sweaters, Garner told
plaintiff and other female employees:  "[The manager who wrote the
guideline] must have hit his head ... you girls can wear these
every day."  In reference to a female employee who had once been

9

demoted, Garner stated that she couldn't do her job "because she was a woman and she didn't know what she was doing." He also joked about the demotion and insinuated that women were not as competent as men.

Phillips testified that a fellow employee, Tom Erwin, repeatedly viewed internet sites at work that contained pornographic photographs. Erwin used a ruler to touch her beneath her breasts and on her buttocks, and once raised her skirt with a ruler. He also "crowded" against her and made a comment about her breast size.

Plaintiff testified that another fellow employee, Ralph Gallups, sent her an e-mail with a photograph of two nude women lying on the beach and an e-mail of a cartoon. Plaintiff has stated that Gallups once unzipped his pants and attempted to expose himself to her when he was at her home during a social occasion. He also made lewd comments about women's thighs, "large women v. small women," and about having sex from behind. He told her that he wanted to see her breasts and that seeing her breasts was a fantasy of his. Gallups put his arm around her on several occasions.

Plaintiff testified that co-worker Michael Boaz placed a copy of a list of "jokes" titled "Let's Bash Both Sexes" on the side of

her cubicle at work.[11]   Another co-worker, Persons, once put his hand on her hip and told her: "I bet you never had a short brother like me."  A screen saver of a woman in a bikini that turns into a "very fat lady" was placed on the computer used by Unity's sales representatives in the office.  Lester once showed her a copy of an e-mail that had been sent by an employee in Unity's corporate office that made vulgar references to women's genitals.   Both Garner and Gallups attempted to kiss plaintiff at a New Year's Eve party.[12]

On one occasion, plaintiff complained to Paul Speight, Garner's supervisor and a part-owner of Unity, about Garner's conduct.  Speight told her that he was treating Garner leniently because Garner's father was in poor health.[13]

On or about April 21, 2000, Phillips resigned from her position at Unity.  On May 5, 2000, she filed a discrimination

---

[11]    The cartoon and the jokes are produced as Exhibit 15 to Unity's evidentary submission.  Phillips also complains about an e-mail depicting a woman with a tattoo on her inner thighs, also contained in Exhibit 15, but admits the tattoo e-mail was sent to her after she resigned from Unity.

[12]    Garner testified that the party was not a work-sponsored or employee-only party, but a social gathering at his home involving neighbors and persons outside of Unity as well as Unity employees.

[13]    It appears from the deposition of Garner that both Garner and Gallups were terminated as of December 2000 as a result of some investigation by Unity; however, Garner testified that no employee was disciplined as the result of Phillips' complaints.  Plaintiff does not address what, if any, measures Unity took in response to her complaints to Speight.

charge with the EEOC.  Phillips alleges that one evening in July
2000, more than two months after she left Unity, Gallups followed
behind her in his car, tailgating dangerously close to her, and
made an obscene gesture toward her.  She filed a second EEOC claim
in July 2000, asserting that Gallups harassed her in retaliation
for the filing of the EEOC complaint.

### III.  DISCUSSION

#### A.  Defendant Speight

Defendant Speight moves for summary judgment in his favor on
all of plaintiff's claims against him in his corporate capacity on
the ground that such claims are duplicative of the claims brought
against Unity and are, therefore, due to be dismissed.  Speight
also urges that the Title VII claims are not viable against Speight
as an individual.  As to a claim under the Equal Pay Act, Speight
asserts that he is not an "employer" subject to liability.
Finally, Speight seeks summary adjudication of all of plaintiff's
state-law claims on the ground that they do not state a claim
against him.

The court agrees that plaintiff's claims against Speight are
due to be dismissed.  He is not an "employer" subject to liability
under the Equal Pay Act.  See  Wascura v. Carver, 169 F.3d 683, 686
(11th Cir. 1999).  It is undisputed that plaintiff's employer was
the corporate entity, Unity Communications.  Similarly, he is not

12

subject to Title VII liability separate from any liability of Unity. See, e.g., Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991). Moreover, none of the facts alleged by plaintiff supports a tort claim against Speight. None of the state-law claims allege any conduct by Speight; plaintiff's only connection to Speight is the fact that, close to the time she resigned, she complained to him about Garner's harassment of her. This is not enough to subject Speight to liability for state torts of battery, conspiracy, slander, and tortious interference with contract. Accordingly, Speight's individual motion for summary judgment is due to be granted, and all claims against defendant Speight are due to be dismissed.[14]


### B. Defendant Unity

#### 1.  Equal Pay Act

The defendant asserts that it is entitled to summary judgment in its favor on the basis that plaintiff has failed to make a *prima facie* showing that she was denied pay equal to her male counterparts.

An Equal Pay Act claim must be supported by a showing that the employer paid males more for doing a job essentially equal to the job done by the female plaintiff. The two jobs must require equal

---

[14]   For the reasons set forth herein, plaintiff's motion for summary judgment on her claims against Speight is due to be denied.

skill, effort, and responsibility, and must be performed under similar working conditions. <u>See, e.g.</u>, <u>Arrington v. Cobb County</u>, 139 F.3d 865, 876 (11th Cir. 1998).

The only support plaintiff provides for her claim of discrimination in pay is bare assertions and unauthenticated payroll documents relating to Lester and Erwin.[15] The documents have been stricken pursuant to defendants' motion to strike. Moreover, even if the documents were considered, they do not demonstrate that plaintiff was discriminated against in salary. The documents show that Erwin was hired at a starting salary that was considerably less than plaintiff's starting salary a year later. Erwin earned $1,666 per month[16] when he was hired in 1998, while Phillips started at $2,500 per month in 1999. Later, Erwin

---

[15]    The documents were not produced or referenced in plaintiff's response to the defendants' motions for summary judgment, but were produced in support of plaintiff's own motion for summary judgment, which is denied in an order entered contemporaneously herewith.

[16]    Although the document relating to Erwin contains a "monthly commission target" that would bring Erwin's earnings to an amount exceeding plaintiff's salary, there is no evidence that the commission amount was paid. Even so, pay based on commissions is one of the statutory exceptions to the Equal Pay Act, which excludes comparisons based on "a system which measures earnings by quantity or quality of production." 29 U.S.C. § 206(d). Moreover, the figures cited by the court are merely recitations of what the inadmissible documents appear to reflect, but plaintiff has failed to offer any explanation that might put the figures into any context. Accordingly, even if the documents were taken into consideration by the court, plaintiffs' "facts" concerning the pay of male co-workers is speculative and fail to establish a violation of the Act.

14

was changed to a flat salary structure equal to that paid plaintiff in June 1999.

The document relating to Lester shows that he was paid initially the same $1,250.00 paid to plaintiff, although it is unclear whether he received a "hiring bonus" or a car allowance, as did plaintiff.  On February 14, 2000, however, Lester received a raise in salary to slightly more than plaintiff, at $1,346.15 every two weeks in base salary, for an annual salary or $30,000.  Again, it is unclear whether he received a car allowance.  He continued at this level of compensation until his promotion to sales manager on March 30, 2000, when his salary was raised to $1,730.77 every two weeks.  At that time, Lester was serving in a managerial position not comparable to plaintiff's.   There is no indication that plaintiff and Lester were not performing equal jobs as sales representatives during the period from February 14 to March 30, 2000.  Thus, plaintiff has made a *prima facie* showing of an Equal Pay Act claim during that time frame, shifting the burden to the defendant employer to explain how the pay differential necessitated by business considerations or otherwise was not a violation of the Act.

Defendant has offered the explanation that Lester was given the pay raise in order to keep him at Unity.  The parties seem to agree that Lester was going through a divorce at the time and was experiencing financial hardship.  Unity argues that the raise was

15

necessary to keep him employed at Unity; otherwise, Lester would have left his employment in search of a higher paying job. Plaintiff argues that the raise was another instance of preferential treatment for male employees.

The court concludes that "the evidence offered to establish the reason for the wage disparity, though it remained undisputed, was not so compelling that it necessarily rebuts the inference of discrimination raised by" plaintiff's *prima facie* showing. Price v. Lockheed Space Operations Co., 856 F.2d 1503, 1506 (11th Cir. 1988). Thus, defendant Unity's motion for summary judgment on plaintiff's Equal Pay Act claim is due to be denied with respect to the plaintiff's claim that Lester was paid more than she for the same work from February 14 to March 30, 2000. There is simply no evidence that plaintiff was paid less than any other male counterpart; accordingly, she has failed to meet her initial burden of proving a *prima facie* case under the Equal Pay Act with respect to her salary as to any other comparator but Lester.[17]

The court notes, however, that plaintiff cannot survive summary judgment on a Title VII wage disparity claim because of the additional element of proof required by Title VII, that is, that the wage disparity was the product of *intentional* gender discrimination. Under the McDonnell Douglas method of proving a

---

[17]    Accordingly, plaintiff's motion for summary judgment on the Equal Pay Act claim is due to be denied.

Title VII violation, the plaintiff must state a *prima facie* case of gender discrimination.    The defendant must then articulate a legitimate, non-discriminatory reason for the pay disparity.    If the employer does so, the burden of proof remains on the plaintiff to show that the articulated reason is not worthy of belief and that the true reason for the disparity is gender discrimination. It is on this last step that plaintiff's Title VII claim stumbles. Assuming that plaintiff has made a *prima facie* case, the defendant has articulated the reason for Lester's raise as being the necessity of giving the raise to keep him from leaving his employment at Unity.    Plaintiff has offered no evidence that this articulated reason is not worthy of belief or is a pretext for discrimination.    Although the reason may not be sufficiently compelling to meet the *employer's* burden of proving an affirmative defense to an Equal Pay Act claim, it is enough standing alone to constitute an "articulated" reason for requiring the plaintiff to rebut it under Title VII.    The plaintiff has failed to rebut the reason, or otherwise even to dispute it.    Consequently, plaintiff's Title VII claim for wage disparity is due to be dismissed because she has failed to present evidence from which a reasonable fact finder could infer that the employer's articulated reason for Lester's raise was pretext or intentional gender discrimination.[18]

_____

[18]    Again it must be noted that there is no evidence that plaintiff also could not have secured such a raise if she had threatened to leave Unity.  Stated simply, plaintiff has offered no

17

Plaintiff additionally claims that Unity paid for Lester's insurance coverage pursuant to COBRA but did not provide the same to plaintiff.[19]  The court first notes that the only evidence that COBRA payments were made for Lester is plaintiff's testimony, based on hearsay.  Moreover, plaintiff admits she did not request the COBRA payment when she was hired, although Lester apparently did.  For all these reasons, Unity's motion for summary judgment as to the plaintiff's Title VII pay claim is due to be granted.

### 2.  Promotion

To establish a *prima facie* case of sex discrimination in the promotion, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for the position that she sought; (3) she was rejected for the position; and, (4) the position was filled by a person outside the protected class who had lesser or equal qualifications.  Combs v. Plantation Patterns, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998), citing Wu v. Thomas, 847

---

evidence from which it can be inferred that Lester's raise was given to him because of gender preference, rather than out of a gender-neutral concern for retaining a valued employee.

[19]  Oddly, plaintiff does not assert that the COBRA payments are violative of the Equal Pay Act, but rather argues that the payments are "evidence of discriminatory intent."  Plaintiff's Brief at p. 5.  Discriminatory intent is not an element of an Equal Pay Act claim.

F.2d 1480, 1483 (11th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1006, 109
S. Ct. 1641, 104 L. Ed. 2d 156 (1989).

As to her claim that she was denied a promotion because she
was female, plaintiff seems to confuse the initial promotion given
to Lester on March 30, 2000,[20] and a potential promotion to the
vacancy created when Lester left shortly thereafter.  Plaintiff
does not demonstrate that she applied for, or expressed any
interest in, the position of sales manager prior to Lester's
promotion.[21]  Indeed, she affirmed in her deposition that she was
unaware of the potential promotion until after Lester was awarded
it.  Absent an application for the position or some expression of
interest in it, it cannot be concluded that the employer
discriminated against the plaintiff by denying her a promotion.

Even if one could conclude that plaintiff was not required to
apply for or express an interest in the position of sales manager
and, therefore, has made out a *prima facie* case of discrimination
with respect to the March 30, 2000, promotion given to Lester,

---

[20]    Plaintiff further confuses the issue by arguing that
Unity made a decision in December 1999 to create a position of
sales manager.  In support of that contention, plaintiff offers
only a "change of status form" for Mike Lester indicating a pay
rate change effective February 14, 2000.  In sum, there is no
evidence to support plaintiff's contention as to when, why, or even
if, Unity created a position of sales manager.

[21]    Although she argues this in her brief, the deposition
testimony reflects that plaintiff's conversation with Garner about
the promotion took place after Lester left the company, not before
Lester was promoted.

plaintiff has not presented any evidence that the employer's articulated reason for promoting Lester is a pretext for discrimination. Garner testified that Lester was chosen for the position of sales manager because he possessed a college degree (plaintiff does not), he had experience as a sales manager with another company (plaintiff does not), and he has more years of experience in sales than plaintiff. Plaintiff has offered no evidence from which a factfinder could infer that these are not the true reasons for Garner's promotion. It is true that plaintiff asserts that Lester often did not meet his sales quota prior to his promotion, but this does not directly rebut the reasons articulated by defendant and does not create a reasonable basis on which it might be inferred that the promotion was really intentional gender discrimination. This is particularly the case when neither defendant nor Garner was aware of any interest she might have had in the promotion.

As far as the sales manager vacancy after Lester left Unity, Unity has demonstrated that it did not fill the position because a sales manager was no longer necessary due to a reduction in the sales force. Despite her affidavit testimony, which is stricken for being a sham contrary to her explicit deposition testimony, plaintiff confirmed in her deposition that she was unaware of anyone filling the sales manager position after Lester and, indeed, it was her understanding that the position was eliminated.

20

Plaintiff seems to ignore the requisites of a *circumstantial evidence* case discussed *supra*, instead arguing that her promotions claim is viable because she offers direct evidence of discrimination, showing that Garner told her she was "fucking stupid," and that a 45-50 year old man could not respect a "23-year-old girl." The statement made by Garner when telephoned by plaintiff, however, does not constitute direct evidence of gender discrimination. Although it might be considered circumstantial evidence of a discriminatory animus, it does not establish that animus "without inference or presumption." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987). The statement is subject to more than one interpretation and, as such, cannot be direct evidence.[22] Harris v. Shelby County Board of Education, 99 F.3d 1078, 1083 n. 2 (11th Cir. 1996). As circumstantial evidence only, the statement does not save plaintiff's post-Lester promotion claim because she is unable to show another essential element of a *prima facie* case, and that is that the position existed and was not filled. Plaintiff has not offered any evidence that this reason is pretextual. Rather, again, the undisputed evidence is that after Lester left Unity, the position of sales manager was eliminated.

---

[22] For example, the statement might be taken to mean that a "girl" is not capable of gaining the respect of male sales representatives. On the other hand, it might be taken to mean that someone as young as plaintiff, whether male or female, would have a difficult time supervising much older employees.

Assuming, without deciding, that the statement constitutes direct evidence of discrimination, the defendant still may defeat plaintiff's claim by showing that the promotion was denied her on "grounds independent" of the alleged discrimination.  In this case, Unity has shown that the promotion was denied to Phillips because the company no longer had a need for a sales manager.  Accordingly, even if plaintiff presented direct evidence of discrimination, defendants are entitled to summary judgment in their favor on the promotion claim.[23]   Accordingly, the plaintiff has failed to make a *prima facie* showing that she was denied a promotion to sales manager on the basis of sex, and Unity is entitled to summary judgment on plaintiff's Title VII promotion claim.

### 3.  Hostile Environment

The defendant seeks summary judgment on plaintiff's claims that she was subjected to a hostile work environment at Unity. Under Title VII, an employer is prohibited from subjecting an employee to a "discriminatory hostile or abusive environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).  To prove a *prima facie* case of hostile environment, plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual

---

[23]   For the same reasons, plaintiff's motion for summary judgment on this claim is due to be denied.

harassment; (3) the harassment was based on her gender; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) a basis exists for holding the employer liable.   See, e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).  Defendants dispute only one element: whether the harassment was sufficiently severe or pervasive to alter the terms and conditions of Phillips' employment.

To be actionable, the environment must be both objectively and subjectively hostile, and whether the workplace may be deemed hostile "can be determined only by looking at all the circumstances."  Id. at 23.  The relevant factors include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and, whether it unreasonably interferes with an employee's work performance."  Id.

The plaintiff sets forth many facts which indicate that Unity provided a sexually charged workplace where employees viewed and exchanged pornographic e-mails, used offensive language, made inappropriate jokes, and touched the plaintiff in sexual ways.  The defendant asserts, however, that the sex-oriented behavior was neither severe nor pervasive enough to constitute sexual harassment under Eleventh Circuit Court of Appeals precedent.

23

The Eleventh Circuit Court of Appeals recently examined the "severe or pervasive" element of a Title VII claim in Gupta v. Florida Board of Regents, 212 F.3d 571 (11th Cir. 2000). Requiring proof that the conduct complained of be sufficiently severe or pervasive to alter the conditions of employment and to create a "hostile or abusive" work environment "ensures that Title VII does not become a mere 'general civility code.'" Id. at 583, quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L. Ed. 2d 662 (1998). Likewise, in Mendoza, the appellate court explained:

> Although Title VII's prohibition of sex discrimination clearly includes sexual harassment, Title VII is not a federal "civility code." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S. Ct. 998, 1000-02, 140 L. Ed. 2d 201 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) ("A recurring point in these opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (internal citation omitted)); Meritor [Savings Bank, FSB v. Vinson], 477 U.S. at 67, 106 S.Ct. 2399 ("Not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII.").

Id. at 1245. The court in Gupta went on to note that the requirement is critical to prevent the courts from turning ordinary socializing in the workplace into discriminatory conduct. Such

ordinary socializing was deemed to include the "sporadic use of abusive language, gender-related jokes, and occasional teasing" as well as horseplay and intersexual flirtation. Gupta, 212 F.3d at 583.

The plaintiff must show that the conduct complained of goes beyond flirtation and sexual joking that is generally accepted within the workplace. The defendant correctly asserts that the Supreme Court has recognized that it is not enough for Phillips to show that her workplace was offensive; rather, she must show that Unity's office was so permeated with discriminatory intimidation, ridicule, and insult that a reasonable person would perceive the environment as hostile or abusive. See Meritor Savings Bank v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986).

In the instant case, the plaintiff's evidence creates a close call. In determining if this critical element of Phillips' sexual harassment claim has been met, the court must look to the frequency, severity, and pervasiveness of the conduct complained of. Again, the court of appeals has said:

> The objective component of this analysis is somewhat fact
> intensive. Nevertheless, the Supreme Court and this
> Court have identified the following four factors that
> should be considered in determining whether harassment
> objectively altered an employee's terms or conditions of
> employment: (1) the frequency of the conduct; (2) the
> severity of the conduct;(3) whether the conduct is
> physically threatening or humiliating, or a mere
> offensive utterance; and (4) whether the conduct unrea-

sonably interferes with the employee's job performance.
<u>Allen v. Tyson Foods</u>, 121 F.3d 642, 647 (11th Cir. 1997)
(citing <u>Harris</u>, 510 U.S. at 23, 114 S. Ct. 367). The
courts should examine the conduct in context, not as
isolated acts, and determine under the totality of the
circumstances whether the harassing conduct is
sufficiently severe or pervasive to alter the terms or
conditions of the plaintiff's employment and create a
hostile or abusive working environment. <u>Id.</u>; <u>see</u> <u>Harris</u>,
510 U.S. at 23, 114 S. Ct. 367; <u>Henson</u>, 682 F.2d at 904;
<u>Faragher</u>, 118 S. Ct. at 2283 (citing <u>Harris</u>, 510 U.S. at
23, 114 S. Ct. 367, and explaining that "we directed
courts to determine whether an environment is suf-
ficiently hostile or abusive by 'looking at all the
circumstances'").

<u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1246 (11th Cir. 1999).

Phillips worked for Unity for only about ten months. Yet,
beginning in December 1999 or January 2000, she recounts numerous
occasions involving sexually explicit pictures, jokes, and
comments. In addition, she claims that her skirt was lifted and
she was touched on the breasts and buttocks. Foul language was
used consistently, if not constantly, by Phillips' direct
supervisor, Garner. The conduct Phillips describes, much of which
is admitted to by Unity in its motion to strike, goes beyond what
may be deemed the "sporadic use of abusive language, gender-related
jokes, and occasional teasing" and intersexual flirtation described
in <u>Gupta</u>, 212 F.3d at 583.

Phillips has testified that the conduct made her uncomfortable
and that she subjectively perceived the work environment to be
hostile. Phillips has presented evidence which, if believed, could

26

show that the harassing conduct was frequent, severe, and pervasive. Phillips has come forward with sufficient evidence from which a reasonable juror could objectively perceive the environment to be hostile or abusive.[24] See Meritor Savings Bank v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986). Furthermore, a reasonable jury could conclude that, because of the hostile environment, plaintiff was constructively discharged when she resigned on April 21, 2000. Accordingly, defendant Unity's motion for summary judgment on the hostile environment claim is due to be denied.


## 4. Retaliation

The plaintiff in a Title VII retaliation case must establish a *prima facie* case by showing: (1) that she engaged in protected conduct and (2) suffered an adverse employment action, that was (3) causally linked to the protected expression. Taylor v. Runyon, 175 F.3d 861, 868 (11th Cir. 1999). In addition, the plaintiff must show that her employer was aware of her participation in the

---

[24] Although plaintiff has succeeded in making a *prima facie* showing that she was subjected to a hostile environment, the court's finding in no way suggests that plaintiff is entitled to summary judgment in her favor on this claim. At best, plaintiff has proven the existence of a fact question for the jury. Certainly, viewing the facts in a light most favorable to defendants, a reasonable jury *could* likewise find that the conduct complained of was not sufficiently severe or pervasive as to affect a term or condition of plaintiff's employment.

protected activity when it took the adverse action.    Maniccia v.
Brown, 171 F.3d 1364, 1369 (11th Cir. 1999).

In the instant case, plaintiff has demonstrated that she
engaged in a protected activity when she filed an EEOC charge on or
about May 9, 2000, *after* she resigned from Unity.  Plaintiff has
failed, however, to point to any adverse employment action that was
taken by Unity or Speight after she filed the charge that was
causally related to her opposition to the alleged sexual
harassment.  The only allegation she makes relating to retaliation
is that she was followed and subjected to an obscene gesture by
Ralph Gallups, a sales person, after she filed the charge.  There
is absolutely no evidence that Gallups was acting on behalf of
Unity.  More important, plaintiff admits that the incident she
alleges was retaliatory occurred after she had left the employer;
therefore, it does not constitute an adverse employment action.
Accordingly, plaintiff's retaliation claim is without any support
in fact or law, and defendant's motion for summary judgment on this
issue is due to be granted.[25]


### 5.  State-Law Tort Claims

Defendant Unity seeks summary adjudication of plaintiff's tort
claims of battery, slander, conspiracy, tortious interference, and

---

[25]    Plaintiff's cross motion is due to be denied for the same
reasons.

threatening conduct.  The court first notes that the state-law claims appear to have been abandoned by plaintiff, as they are not addressed in plaintiff's response to the defendant's motion for summary judgment.  Even if not abandoned, it is clear that the claims are due to be dismissed.

Under Alabama law, an employer may be liable for the tortious conduct of its employees only in limited circumstances.  The employer may be directly liable "only if the company authorized or participated in" the tortious conduct or ratified the conduct after learning of it.  See Kilgore v. Thompson & Brock Mgt., Inc., 93 F.3d 752, 755 (11th Cir. 1996).  The employer may be held vicariously liable only if the acts complained of were "done in the line and scope of employment" and for the benefit of the employer. Id.  To hold an employer liable for an intentional tort committed by an employee, a plaintiff must also show: (1) that the employer "had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take "adequate" steps to remedy the situation."  Potts v. BE & K Construction Co., 604 So. 2d 398, 400 (Ala. 1992)

29

Plaintiff does not set forth any basis for a finding that any battery that may have occurred[26] was committed in the line and scope of employment or was ratified by Unity.  Similarly, the alleged slanderous statement[27] was made by an employee, and there is no evidence Unity knew the statement was made.  Consequently, there is no basis for holding Unity liable for the statement, even if it were made and even if it were actionable.  Plaintiff's complaint also alleges that defendants threatened her with bodily harm, but she similarly has presented no evidence that any such threat[28] was made or that Unity could be liable in any way for such conduct.  Plaintiff's claim alleging tortious interference also is not supported by any fact or law.

Plaintiff's remaining state-law claim appears to state a claim that the defendants conspired to harm her.  A civil conspiracy does not constitute a claim without an underlying wrong, which plaintiff

---

[26]    The court assumes without deciding that plaintiff's allegations that Erwin or Gallups touched plaintiff could form the basis for a claim of battery.  There is no evidence that Speight or Unity was aware of such conduct, condoned it, or ratified it. Plaintiff never filed any formal complaint regarding sexual harassment and spoke to Speight about it only shortly before she resigned.

[27]    Again, the court assumes without deciding that plaintiff's allegations that an employee told a customer that plaintiff had lied could form the basis of a claim for slander.

[28]    Plaintiff does allege that she felt intimidated by Gallups when he followed her in his car, but Gallups is no longer a defendant, and there is no evidence to support any claim that Gallups was acting on behalf of Unity or Speight.

has failed to prove.  <u>See</u> <u>Nance v. Maxwell Federal Credit Union</u>, 186 F.3d 1338, 1342 (11th Cir. 1999).  The allegation of a conspiracy "serves merely to expand liability for the underlying wrong to persons who were not directly involved in the wrongful actions." <u>Id</u>.  In this case, plaintiff has not provided any evidence to prove the existence of any conspiracy among her fellow employees or between them and Unity.

All of the state-law claims asserted by plaintiff are intentional torts allegedly committed by employees of Unity. Plaintiff has failed to show any facts that would support a finding of direct or vicarious liability of Unity.  For all these reasons, Unity's motion for summary judgment on the state-law tort claims set forth in the complaint as Counts VI, VII, VIII, IX and X is due to be granted, and the claims are due to be dismissed.


## IV.  CONCLUSION

Based on the foregoing undisputed facts and legal conclusions, the court determines that:


1.  The motion for summary judgment filed by plaintiff Crystal Lynn Phillips (Court document #68) is due to be DENIED.

2.  The motion for summary judgment filed by defendant Paul Speight (Court document #62) is due to be

GRANTED, and all claims against Speight are due to be DISMISSED WITH PREJUDICE.

2.   The motion for summary judgment filed by Unity Communications, Inc., (Court document #65) is due to be GRANTED in part and DENIED in part.  All claims against Unity, except plaintiff's Equal Pay Act claim relating to the pay of Mike Lester from February 14 to March 30, 2000, and plaintiff's claim that she was subjected to a hostile working environment in violation of Title VII, are due to be DISMISSED WITH PREJUDICE.

A separate order will be entered in accordance with the findings set forth herein.

DATED this 11th day of December, 2002.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE